## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

Patrick Williams, Ph.D.,

                **Plaintiff,**

v.                                           **Case No. 12-2620-JWL**

Evogen, Inc. and Thomas Jantsch,

                **Defendants.**

### MEMORANDUM & ORDER

Plaintiff Patrick Williams, Ph.D., filed suit against his former employer, Evogen, Inc. ("Evogen"), and Evogen's President and Chief Executive Officer, Thomas Jantsch asserting numerous claims arising out of the termination of his employment with Evogen. This matter is presently before the court on defendant Evogen's motion to dismiss plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) and to strike certain allegations in the complaint (doc. 10) and defendant Thomas Jantsch's motion to dismiss plaintiff's claim pursuant to Rule 12(b)(6) (doc. 27). As will be explained, defendant Evogen's motion to dismiss and to strike is granted in part and denied in part, and Evogen may refile that aspect of the motion seeking to strike certain allegations in the complaint as described below. Defendant Thomas Jantsch's motion to dismiss is granted in part and denied in part.

**Background**

The following well-pleaded factual allegations, taken from plaintiff's complaint, are accepted as true for purposes of defendants' motions.  Plaintiff began his employment with defendant Evogen, Inc. in November 2007 as the Director of Research and Business Development.  During the course of his employment, plaintiff successfully obtained a Phase I research grant from the United States Department of Defense.  Plaintiff then applied for a Phase II research grant from the Department of Defense which he received in January 2012.  The grant named plaintiff as the Principal Investigator.  According to plaintiff, he was informed in February 2012 that Evogen's Board of Directors wanted to use the grant funds for expenses unrelated to the research project.  Plaintiff advised a board member that the use of the grant funds for other business expenses would violate the Department of Defense contract and would be illegal.

On February 21, 2012, defendant Thomas Jantsch told plaintiff that the Board decided not to pursue the Phase II Department of Defense contract because they could not use the funds the way they wanted.  According to plaintiff, Mr. Jantsch then advised plaintiff that Evogen no longer needed his services and "besides, you're too old to be doing this stuff anyway."  His employment was terminated at that time.  Shortly thereafter, Mr. Jantsch sent a letter to Evogen's business partners and customers advising them about the termination of plaintiff's employment and suggesting that plaintiff's termination was the result of plaintiff's own wrongdoing.

In his complaint, plaintiff asserts nine causes of action against one or both defendants. He alleges that Evogen violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., by terminating his employment based on his age; that defendant Jantsch tortiously

interfered with a prospective business advantage or contractual relationship that plaintiff had with Evogen; that both defendants breached an implied contract of employment with plaintiff as well as the covenant of good faith and fair dealing implied in that contract; and that defendant Evogen wrongfully discharged plaintiff in retaliation for his opposition to defendants' use of the grant money for unrelated expenses and/or on the basis of plaintiff's age. Plaintiffs' remaining claims include injurious falsehood and defamation claims against defendant Jantsch and a false light invasion of privacy claim against both defendants. In their motions, defendants challenge each of plaintiff's claims.

**Pleading Standards**

Defendants' motions to dismiss are based on Federal Rule of Civil Procedure 12(b)(6). In analyzing such motions, the court accepts as true "all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortgage Elec. Registration Sys., Inc.*, ___ F.3d ___, 2013 WL 386283, at *2 (10th Cir. Feb. 1, 2013) (citation omitted). Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Burnett*, ___ F.3d at ___, 2013 WL 386283, at *2 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

According to the Tenth Circuit, "[t]wo working principles underlie this standard. 'First, the tenet that a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). "Thus, mere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Id.* (citations and quotations omitted). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* (quoting *Iqbal*, 556 U.S. at 679). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). "The complaint must offer sufficient factual allegations 'to raise a right to relief above the speculative level.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Although "[s]pecific facts are not necessary" to comply with Rule 8(a)(2), the complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555)) .

"Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "This contextual approach means comparing the pleading with the elements of the cause(s) of action." *Id.* (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012)). While a plaintiff "is not required to set forth a prima facie case for each element, [he or] she is required to set forth plausible claims animating the elements" of each cause of action. *Id.* (quotations omitted). "Pleadings that do not allow for at least a 'reasonable inference' of the legally relevant facts are insufficient." *Id.* (citing *Iqbal*, 556 U.S. at 678).

**Age Discrimination**

Plaintiff alleges in Count I of his complaint that defendant Evogen terminated his employment in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq.   Defendant Evogen moves to dismiss plaintiff's ADEA claim on the grounds that Evogen does not have the requisite number of employees for ADEA coverage.  *See* 29 U.S.C. § 630(b) (defining employer as employing twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year).  Although plaintiff alleges in his complaint that "Evogen was an employer as defined in the Age Discrimination in Employment Act," defendant contends that plaintiff, at the time of the filing of his complaint, knew that allegation was false because the EEOC informed plaintiff when it issued a Notice of Right to Sue that Evogen "employs less than the required number of employees or is not otherwise covered by the statutes."  Defendant has submitted an affidavit purporting to demonstrate that Evogen has never employed more than 15 employees during the relevant time period.  Defendant further contends that plaintiff's bare allegation, in the absence of factual support, is not sufficient under *Iqbal* and *Twombly*.

As a procedural matter, because defendant did not move for summary judgment under Rule 56, and the court declines to treat the motion as such on its own initiative under Rule 12(d), consideration of defendant's affidavit at this stage is inappropriate and the court disregards it. *Commonwealth Property Advocates, LLC v. Mortgage Electronic Registration Systems, Inc*., 680 F.3d 1194, 1201 (10th Cir. 2011) (in evaluating a motion to dismiss under Rule 12(b)(6), the court may consider the complaint, exhibits attached to the complaint and documents incorporated into the complaint by reference).  While the court may consider the EEOC's Notice

of Right to Sue as it is referenced in plaintiff's complaint, neither the court nor plaintiff is bound by the EEOC's determination that defendant does not have the requisite number of employees for coverage and plaintiff is permitted to test that conclusion through the discovery process. *See de la Rosa v. Bay City Texas Anesthesiologists, P.A.*, 2010 WL 6339848, at *2 (S.D. Tex. Jan. 22, 2010) (refusing to dismiss under Rule 12(b)(6) plaintiff's Title VII claim based on EEOC's determination that employer did not meet statutory definition of employer; plaintiff alleged that defendant was an employer for purposes of Title VII and that allegation satisfied 12(b)(6) standard). If plaintiff has a good faith basis to believe that defendant meets the statutory definition, he should be permitted to engage in appropriate discovery.[1]

The court further concludes that plaintiff's ADEA claim, taken as a whole, satisfies *Iqbal* and *Twombly* even though his "employer" allegation "parrots" the statute. Indeed, it is difficult to imagine what additional information (other than the obvious "20 or more employees" language that also parrots the statute) plaintiff might be expected to provide concerning Evogen's status as an "employer" under the ADEA. In any event, the court has not uncovered any case dismissing a statutory discrimination claim on this basis and, in fact, another court has expressly rejected the idea as contrary to "judicial experience and common sense." *See Shomo v. Junior Corp.*, 2012 WL 2401978, at *2-3 (W.D. Va. June 1, 2012) ("employer" allegations sufficient even when, in isolation, they merely parroted the statute; when read in context of additional substantive allegations concerning discrimination, complaint as a whole satisfied

---

[1] The parties might consider contacting the court to set a discovery schedule limited to this issue and deadlines for an early partial motion for summary judgment to resolve the question sooner rather than later.

plausibility standard of *Iqbal* and *Twombly*).  Taken as a whole, plaintiff's ADEA claim satisfies the plausibility standard.

**Tortious Interference with Prospective Business Advantage and Contract**

Plaintiff asserts in Counts II and III of his complaint, alternatively, that defendant Jantsch tortiously interfered with plaintiff's continued employment with Evogen by terminating plaintiff's employment with Evogen.  Defendant Jantsch moves for dismissal of these claims on the grounds that Mr. Jantsch was acting in his official capacity as Evogen's CEO when he terminated plaintiff's employment and a party cannot interfere with its own contract or business advantage.  While Mr. Jantsch concedes that plaintiff's complaint alleges that he was acting out of "personal motives for personal benefit" such that he "stepped out of his official capacity with Evogen," defendant Jantsch contends that there is no "evidence suggesting any personal benefit that would have or did accrue to Mr. Jantsch as a result of Plaintiff's termination."

Of course, plaintiff is not required to come forward with evidence of anything at this juncture.  Moreover, the allegations in plaintiff's complaint give rise to a plausible claim that Mr. Jantsch acted outside his official capacity as Evogen's CEO when he terminated plaintiff's employment.   Plaintiff alleges that defendant Jantsch acted "maliciously" and "out of vindictiveness and a desire to dictate how the company would expend resources and manage assets."  An allegation of malice is typically inconsistent with an allegation that an employee is acting within the scope of employment. *See Garcia v. Tyson Foods, Inc.*, ___ F. Supp. 2d ____, 2012 WL 3583708, at *5 (D. Kan. Aug. 20, 2012) (citing *Williams v. Community Drive-In Theater*, 214 Kan. 359 (1974)).  Because plaintiff's complaint adequately alleges that Mr.

7

Jantsch was acting outside the scope of his employment when he terminated plaintiff's employment, the motion to dismiss is denied on this issue. *See id.* (denying motion to dismiss tortious interference claim where complaint "may be fairly read to include the allegation that [defendant] was acting outside the scope of his employment.")

**Implied Contract**

Plaintiff alleges in his complaint that both defendants breached an implied-in-fact contract of employment that plaintiff enjoyed with Evogen. According to the allegations in plaintiff's complaint, this implied contract was based on Evogen's "widely understood practices and procedures" providing for progressive discipline and fair warning prior to termination. Plaintiff further alleges that defendant Jantsch was fully aware of this implied contract through his experience in the company's culture and in the administration of its policies. Defendants move for dismissal of this claim on the grounds that the allegations fail under *Iqbal* and *Twombly*.[2] The court rejects this argument and concludes that plaintiff's allegations satisfy the pleading standards of *Iqbal* and *Twombly*. *See Dreves v. Hudson Group (HG) Retail, LLC*, 2012 WL 668774, at *3 (D. Vt. Feb. 29, 2012) (denying Rule 12(b)(6) motion on implied contract claim where plaintiff alleged policy and practice of progressive discipline; that policy modified her at-will status and created a contract; and that employer breached that contract by violating

---

[2] Defendants also contend that plaintiff's allegations contradict the "available evidence," including several documents in which plaintiff acknowledged the at-will nature of his employment. Only one of those alleged documents is appropriately before the court and it is not conclusive on the nature of the employment relationship between the parties.

8

policy of providing progressive discipline; allegations gave defendant fair notice of the claim and plausibly gave rise to entitlement to relief).

**Good Faith and Fair Dealing**

In Count V of his complaint, plaintiff alleges that both defendants breached the covenant of good faith and fair dealing implied in every contract. Defendants move to dismiss this claim on the grounds that Kansas courts have repeatedly rejected such claims in the at-will employment context. *State v. Urista*, ____ P.3d ____, 2013 WL 475831, at *6 (Kan. Feb. 8, 2013); *Morriss v. Coleman Co*., 241 Kan. 501, 518 (1987). Defendants' argument, then, presupposes that plaintiff cannot establish the existence of an implied contract of employment. As indicated above, plaintiff has stated a claim for breach of an implied employment contract that is plausible on its face. The court, then, denies defendants' motion with respect to plaintiff's good faith and fair dealing claim.

**False Light Invasion of Privacy**

Count VI of plaintiff's complaint asserts a claim against both defendants for false light invasion of privacy based on a February 24, 2012 letter that defendant Jantsch sent to "numerous third persons" concerning plaintiff's termination. Defendants move for dismissal of this claim on the grounds that plaintiff has alleged no facts that would constitute "publicizing" as required to demonstrate such a claim and that, in any event, the contents of the letter would not be highly offensive to a reasonable person as required to demonstrate such a claim. *See Byers v. Snyder*, 44 Kan. App. 2d 380 (2010) (false light invasion of privacy claim requires publication to a third

9

party; publication must falsely represent the person; and representation must be highly offensive to a reasonable person). As will be explained, the court grants defendants' motions as to this claim.

According to defendants, a plaintiff alleging a false light claim under Kansas law must show "widespread disclosure of private matters," such as a communication "to the public at large or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." In the case cited by defendants, *Dominguez v. Davidson*, 266 Kan. 926 (1999), the Kansas Supreme Court affirmed the grant of summary judgment in favor of the defendant because the plaintiff had not presented evidence that the alleged offensive statements had become common knowledge in the pertinent business community or in any other public arena. *Id*. at 937-38. Here, plaintiff has alleged that Mr. Jantsch sent the letter to "numerous third persons" and, indeed, the letter itself reflects that it was sent to Evogen's "business partners and customers," which presumably is the business community pertinent to Evogen and plaintiff. For purposes of Rule 12(b)(6), plaintiff has sufficiently alleged the publication element of his false light claim. *Machon v. Pennsylvania Dept. of Public Welfare*, 847 F. Supp. 2d 734, 750 (E.D. Pa. 2012) (denying Rule 12(b)(6) motion on false light claim where defendants did not disclose information to the "public at large" but neither did they disclose it to only one person; number of people who overheard the disclosure is a question of fact).

The court turns, then, to defendants' argument that the contents of the letter, as a matter of law, would not be highly offensive to a reasonable person. The contents of the letter may be considered by the court because it is referenced in plaintiff's complaint, it is central to plaintiff's

claim and plaintiff does not dispute its authenticity.  *Berneike v. CitiMortgage, Inc.,* ___ F.3d

___, 2013 WL 657032, at *3 (10th Cir. Feb. 25, 2013).  In full, the letter states as follows:

> Dear Business Partners and Customers:
>
> Effective February 21, 2012 Patrick Williams' employment with Evogen, Inc. is terminated.
>
> Dr. Williams is subject to Confidentiality and Non-Compete Agreements and is no longer authorized, in fact prohibited, from speaking on behalf of or about Evogen, Inc. or from proceeding on any projects he may have had involvement in while at Evogen.  Primary personnel working on Evogen's projects have not changed and there will be no disruption of work.
>
> All Intellectual Property remains the sole property of Evogen, Inc.  Evogen is now and in the future a molecular diagnostics company and has every intention of continuing all projects related to molecular diagnostics without disruption.
>
> If Dr. Williams is in contact with you please be aware he is not an authorized agent of Evogen and is not to discuss matters related to projects, Evogen Intellectual Property, the Company or represent himself as able to continue work on any projects or matters related to the work or technology at Evogen.
>
> Please do not hesitate to contact me if you have any questions.

The letter is signed by defendant Jantsch as the President and Chief Executive Officer of

Evogen.  Plaintiff alleges in his complaint that the letter clearly suggests that plaintiff's

termination was based on some unprofessional, inappropriate conduct on the part of plaintiff or

that plaintiff had otherwise engaged in wrongdoing.  According to plaintiff, the letter was

highly offensive to plaintiff and would be highly offensive to a reasonable person.  The court

cannot agree.  According to Restatement (Second) of Torts § 652E, "serious offense may

reasonably be expected to be taken by a reasonable man in [the plaintiff's] position" when

"there is . . . a major misrepresentation of his character, history, activities or beliefs."  Nothing

in the letter remotely misrepresents plaintiff's character, history, activities or beliefs.

Terminating an employee and advising customers of that decision is not, without more, highly offensive to a reasonable person.  Likewise, emphasizing that the former employee has no authority to act on behalf of or discuss the business of the former employer does not give rise to any reasonable inference of wrongdoing or malfeasance.  Finally, the court can discern no false information in the letter at all.  In such circumstances, the court concludes, as a matter of law, that no reasonable person would be highly offended by the contents of defendant Jantsch's letter.  Because plaintiff has not set forth a plausible claim for relief, the court grants defendant's motion to dismiss this claim.

**Defamation**

Plaintiff alleges in his complaint that defendant Jantsch's February 24, 2012 letter contained "false and defamatory words."  Defendant Jantsch moves to dismiss plaintiff's defamation claim on the grounds that the letter, in fact, contained no defamatory content and that, in any event, plaintiff's complaint is devoid of factual support for the allegation that the letter contained false and defamatory statements.  The court grants the motion to dismiss on the grounds that the letter, as a matter of law, is not defamatory.  *Saint-Jean v. District of Columbia*, 846 F. Supp. 2d 247, 266-67 (D.D.C. 2012) (in resolving a 12(b)(6) motion, a court may only consider whether a statement cannot be reasonably capable of a defamatory meaning).  The letter, taken as a whole, could not reasonably have been understood by the recipients of the letter to have been intended in any defamatory sense.  *See id*. at 267 (publication must be considered as a whole as it would be understood by readers to whom it was addressed; context is key).  Indeed, it is difficult to imagine what other words defendant Jantsch could have used to advise

Evogen's customers that plaintiff was no longer employed by Evogen and was unauthorized to speak on behalf of Evogen—a message that defendant Jantsch is surely entitled to deliver to Evogen's customers.

Because plaintiff's defamation claim is based solely on the contents of the February 24, 2012 letter, and because that letter on its face is not defamatory, the court will not provide plaintiff an opportunity to amend his complaint as any amendment would be futile.

**Injurious Falsehood**

Plaintiff also asserts a claim against defendant Jantsch for injurious falsehood under Missouri law. The tort of injurious falsehood consists of the publication of false statements about a plaintiff, his property or his business, which cause him or her pecuniary loss. *Stein v. Novus Equities Co.*, 284 S.W.3d 597, 604 (Mo. Ct. App. 2009). As an initial matter, defendant Jantsch argues that this claim fails for the same reasons as plaintiff's false light and defamation claims fail—plaintiff's complaint does not sufficiently allege the publication of false statements. The court agrees that plaintiff's claim for injurious falsehood suffers from the same fatal defects as described above and the claim is dismissed for those reasons. Defendant Jantsch further argues that the claim is subject to dismissal because plaintiff has failed to allege facts supporting the bare allegation that plaintiff suffered pecuniary loss as a result of any alleged false statements. The court agrees that plaintiff's complaint is also deficient in this respect. Under Missouri law, consistent with other jurisdictions and the Restatement (Second) of Torts, "pecuniary loss" for purposes of an injurious falsehood claim is synonymous with "special damages," *see Lau v. Pugh*, 299 S.W.3d 740, 751-52 (Mo. Ct. App. 2009), requiring greater

13

specificity at the pleading stage.  *See* Fed. R. Civ. P. 9(g); *General Steel Domestic Sales, LLC v. Chumle*y, 2011 WL 2415167, at *2-3 & n.2 (D. Colo. June 10, 2011) (dismissing commercial disparagement claim for failure to sufficiently plead special damages under Rule 9(g)). [3]

In his complaint, plaintiff alleges that he suffered pecuniary loss as a result of defendant Jantsch's February 24, 2012 letter, but he does not allege the nature of that loss. He alleges generally in his complaint that he has not been able to secure a job since his termination from Evogen, but he does not allege any connection between the letter and his inability to secure employment.  In the absence of any factual support for the allegation of pecuniary loss, the claim is subject to dismissal.  *See Luxpro Corp. v. Apple Inc*., 2011 L 1086027, at *14 (N.D. Cal. Mar. 24, 2011) (dismissing trade libel claim where plaintiff did not allege specific facts about alleged pecuniary loss); *TMIRS Enterprises, Ltd. v. Godaddy.com, Inc*., 2010 WL 3063659, at *5 (S.D. Tex. Aug. 3, 2010) (denying motion to dismiss business disparagement/injurious falsehood claim but requiring plaintiff to amend complaint to provide appropriate factual support regarding special damages); *Franklin Fueling Systems, Inc. v. Veeder-Root Co*., 2009 WL 2462505, at *5-6 (E.D. Cal. Aug. 11, 2009) (bare allegation of pecuniary loss is insufficient for the pleading of a trade libel claim); *Correctional Medical Care, Inc. v. Gray*, 2008 WL 248977, at *16-17 (E.D. Pa. Jan. 30, 2008) (dismissing commercial disparagement claim where plaintiffs failed to allege with any plausibility that pecuniary loss resulted from defamatory email; plaintiffs provided no factual allegations of causation and no factual allegations of particular customers or contacts lost because of email); *Marseilles Hydro*

---

[3] Although the Restatement (Second) of Torts refers to the tort as "injurious falsehood," it is known variously as commercial disparagement, trade libel, slander of goods and disparagement of property. *See Rain v. Rolls-Royce Corp*., 626 F.3d 372, 381 (7th Cir. 2010).

*Power, LLC v. Marseilles Land & Water Co.*, 2003 WL 259142, at *6-7 (N.D. Ill. Feb. 4, 2003) (dismissing slander of title claim where plaintiff failed to plead actual, realized pecuniary injury).  Because the claim is subject to dismissal for independent reasons, the court will not permit plaintiff an opportunity to amend his claim to support his allegation of pecuniary loss.

**Wrongful Discharge**

Lastly, plaintiff asserts a single claim against defendant Evogen for both wrongful discharge in violation of Kansas's public policy against age discrimination and retaliatory discharge in light of plaintiff's opposition to illegal practices.  Defendant moves to strike that portion of the claim that is based on a public policy against age discrimination as the KADEA provides an adequate remedy for the discrimination alleged.  Plaintiff complains that the remedies available under the KADEA are significantly restricted such that it is not an adequate alternative remedy.  Neither party, however, has addressed the affect, if any, that plaintiff's ADEA claim has on the viability of his common law wrongful discharge claim.  Because defendant Evogen's motion in this respect seems to presume the dismissal of his ADEA claim, the court believes it is appropriate to deny the motion and permit Evogen to refile the motion to address the implication of plaintiff's ADEA claim on his common law claim.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Evogen's motion to dismiss and strike (doc. 10) is granted in part and denied in part.  It is granted with respect to plaintiff's false light invasion of privacy claim and is otherwise denied, but Evogen may refile its motion to strike as noted above.  Defendant Thomas Jantsch's motion to dismiss

15

(doc. 27) is granted in part and denied in part.   It is granted with respect to plaintiff's false light invasion of privacy, defamation and injurious falsehood claims and is otherwise denied.

**IT IS SO ORDERED.**

Dated this 12th day of March, 2013, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

16